UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BANNECK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>　　　　Defendant. | Case No. 3:17-cv-04657-WHO<br><br>**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 49 |

**INTRODUCTION**

Banneck filed this consumer class action against Federal National Mortgage Association ("Fannie Mae") alleging two claims under the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1 et seq. (CCRAA) and one claim under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (FCRA). He alleges that Fannie Mae's Desktop Underwriter ("DU") system, which lenders use to determine whether an applicant's loan is eligible for purchase by Fannie Mae, generated a DU Findings Report that inaccurately identified his prior short sale as a foreclosure and impacted his ability to have his loan application approved. And he contends that Fannie Mae prohibits mortgage originators from providing consumers with a copy of the information included in the DU Findings Report, in violation of the CCRAA and FCRA.

I previously allowed Banneck's "reasonable procedures" claim under section 1785.14(b) to proceed and dismissed his other claims. He then filed an amended complaint ("AC"). Fannie Mae now moves to dismiss his prohibited disclosure claims under both acts because its contracts, on which Banneck relies, expressly permit disclosure. It also argues that the penalty bar under the Housing and Economic Recovery Act of 2008 (HERA) precludes Banneck's requests for statutory damages and injunctive relief, and his willfulness claims fail because Fannie Mae's interpretation

that FCRA and the CCRAA did not apply to it was objectively reasonable. But the penalty bar does not apply, and while Fannie Mae may ultimately prevail on its other arguments, we are at the pleading stage and Banneck's allegations are plausible. For the reasons stated below, Fannie Mae's motion is DENIED, except that Banneck's requests for other forms of equitable relief are DISMISSED. Because this matter is suitable for determination without oral argument, the hearing is VACATED. Civil L. R. 7-1(b).

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. Fannie Mae's Desktop Underwriter System

Fannie Mae, a for-profit corporation, is a government-sponsored enterprise chartered by Congress to make home ownership more accessible by purchasing mortgages from lenders in the secondary mortgage market. Am. Compl. ("AC") ¶¶ 12, 14–15 (Dkt. No. 45); *see* 12 U.S.C. §§ 1716–17. It purchases "conventional conforming" loans, which means that they are less than $417,000 and have "certain prescribed risk characteristics." *Id.* ¶ 18. It then bundles them as securities or holds them in its portfolios. *Id.* ¶ 19.

Mortgage lenders and brokers contracting with Fannie Mae must lease or license Fannie Mae's Desktop Underwriter system ("DU System") and use it to submit mortgage applications. *Id.* ¶ 21. The DU System compiles information contained in the application and raw credit data from consumer credit reporting agencies and generates a report, known as the Desktop Underwriting Findings report ("DU Findings Report"). *Id.* ¶¶ 23, 26. The DU Findings Report contains information on "the applicant's credit history, credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, assets, income, debt-to-income ratio, and employment." *Id.* ¶ 27. The DU Findings Report also includes conclusions on whether the applicant's loan is eligible for purchase by Fannie Mae and recommendations on whether the lender should grant, deny, or approve the loan subject to certain conditions. *Id.* A "Refer with Caution" recommendation on a DU Findings Report will lead the lender to deny the mortgage application. *Id.* ¶ 54.

Fannie Mae's contracts with mortgage lender clients and DU users prohibit the users from

disclosing the DU Findings Reports to applicants who are the subject of those reports. *Id*. ¶¶ 28, 73. Specifically, the Fannie Mae Software Subscription Form/Agreement prohibits mortgage lenders from making copies of DU Findings Reports, and prohibits them from distributing or allowing access to any component of them to "any person." *Id. ¶* 74. Another standardized contract, the Desktop Underwriter Schedule Non-Seller/Service (DU-Only) Terms and Conditions reiterates this requirement. *Id.* ¶ 75. The DU user is only permitted to provide a consumer with Fannie Mae's recommendation and related underwriting findings, but not any other contents of the DU Findings Report, even when adverse action is taken on the basis of the reports. *Id*. ¶¶ 76–77.

### B. Banneck's Experience

Banneck owned certain real estate subject to a mortgage lien. *Id*. ¶ 44. In February 2010, he negotiated a short sale of his real estate satisfying both his first and second mortgages. *Id*. ¶ 48. After waiting the obligatory two years following his short sale, Banneck sought to obtain a mortgage loan through Red Rock Mortgage to purchase a residential property in Las Vegas, Nevada, in or around April or May 2013. *Id*. ¶¶ 49–51. He was denied conventional mortgage financing, allegedly because his DU Findings Report contained a "Refer with Caution" recommendation. *Id*. ¶¶ 52–53. He claims that the "Refer with Caution" recommendation resulted from Fannie Mae inaccurately identifying his previous short sale as a foreclosure, which automatically disqualifies an applicant for conventional mortgage financing for seven years, rather than two. *Id*. ¶ 54.

> Specifically, the DU Findings Report provided to Red Rock stated the following,
> Desktop Underwriter has identified a deed-in-lieu of foreclosure that was reported within the last two years, or a foreclosure that was reported within the last seven years. This loan is ineligible for delivery to Fannie Mae.

*Id*. ¶ 55. Fannie Mae described DU's identification of a pre-foreclosure or short sale as follows:

| Borrower | Creditor | FC Type | Account Number | Date Report |
|---|---|---|---|---|
| James Banneck | HSBC Bank | Foreclosure | ****1933 | 06/13 |

*Id*. ¶ 58; *see also* AC, Ex. 1. According to Banneck, his DU Findings Report correctly identified the previous short sale, but also manufactured a non-existent foreclosure because the short sale

3

1  was more than two years prior. *Id*. ¶¶ 59, 64. He alleges that he requested that Red Rock
2  Mortgage provide him with a complete copy of the DU Findings Report, but Red Rock refused to
3  provide it. *Id*. ¶ 78.

### C. Fannie Mae's Knowledge

Banneck alleges that Fannie Mae's internal documents acknowledge that it is subject to FCRA (and, correspondingly, the CCRAA) when it uses consumer credit reports. *Id*. ¶¶ 29–31. According to Banneck, Fannie Mae became "increasingly aware" in 2012 and 2013 of complaints from borrowers, mortgage lenders/brokers, consumer reporting agencies, resellers, consumer reporting trade industry associations, the Consumer Financial Protection Bureau, and members of Congress, but it refused to reprogram the DU System. *Id*. ¶ 43. In May 2013, the Consumer Protection Subcommittee of the United States Senate Committee on Commerce, Science and Transportation discussed the issue of Fannie Mae's DU System inaccurately reporting short sales as foreclosures. *Id*. ¶¶ 67–68. The error was brought to Fannie Mae's attention and it announced a change to attempt a manual "fix" for the problem. *Id*. ¶ 70; *see also* Desktop Originator/Desktop Underwriter Release Notes DU Version 9.1 dated August 20, 2013 (AC, Ex. 3). But consumers continued to be wrongfully denied even after these changes were expected to take effect in November 2013. *Id*. ¶ 71.

## II. PROCEDURAL HISTORY

Banneck filed his initial class action complaint on August 12, 2017, alleging three causes of action under the CCRAA. Compl. (Dkt. No. 1). Fannie Mae moved to dismiss (Dkt. No. 19), which I granted in part and denied in part ("Prior Order")(Dkt. No. 37). Since Banneck conceded that he did not request information from Fannie Mae or convey a dispute directly to Fannie Mae, I dismissed his "right-to-access" claim under California Civil Code sections 1785.10 and 1785.15, and his "reinvestigation" claim under California Civil Code section 1785.16 without leave to amend. Prior Order at 1–2. But his "reasonable procedures" claim under section 1785.14(b) survived because it is not "based on the same act or omission" as the pending Fair Credit Reporting Act ("FCRA") putative class action in *Walsh v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-00761 (D. Ariz.). *Id*. at 2.

4

The parties thereafter stipulated to Banneck filing an amended complaint (Stipulation, Dkt. No. 42; Order, Dkt. No. 43), which he filed on March 21, 2018. AC (Dkt. No. 45). He brings his amended complaint on behalf of three purported California classes and one National class, and asserts three claims on behalf of himself and purported class members: (1) violation of the CCRAA, Cal. Civ. Code § 1785.14(b), for failing to follow reasonable procedures to assure "maximum possible accuracy" of the reports it sold; (2) violation of the FCRA, 15 U.S.C. § 1681e(c), by prohibiting users of DU software from disclosing DU Findings Reports to consumers, even when consumers are subject to adverse action based on the report; and (3) violation of the CCRAA, Cal Civ. Code § 1785.14(c), for the same acts alleged in count two. AC ¶¶ 80, 89–94. He also brings one claim as an individual, alleging that Fannie Mae violated the CCRAA § 1785.10.1 "by prohibiting, dissuading, and/or attempting to dissuade, including through the use of contracts, users of DU Findings Reports from providing Mr. Banneck with copies of such reports to him upon request, even when the user had taken adverse action against him based in whole or in part on the report." *Id*. ¶ 96.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court

United States District Court
Northern District of California

1   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
2   fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
3   2008).

4   If the court dismisses the complaint, it "should grant leave to amend even if no request to
5   amend the pleading was made, unless it determines that the pleading could not possibly be cured
6   by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In
7   making this determination, the court should consider factors such as "the presence or absence of
8   undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous
9   amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*
10  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.    FCRA'S STATUTORY DAMAGES**

Fannie Mae argues that Banneck's new claim for statutory damages under the FCRA is "an attempt to end-run" the Prior Order dismissing his demands for amounts in the nature of penalties. Mot. to Dismiss AC at Prior Order at 2–7 ("MTD")(Dkt. No. 49). The Housing and Economic Recovery Act of 2008 (HERA) provides that "in any case in which the [Federal Housing Finance] Agency is acting as a conservator or a receiver … [it] shall not be liable for any amounts in the nature of penalties or fines[.]" 12 U.S.C. § 4617(j)(1),(4) ("the Penalty Bar"). Fannie Mae states that FHFA has acted as conservator of Fannie Mae since September 2008, and as conservator, FHFA succeeded to "all rights, titles, powers, and privileges … with respect to [Fannie Mae] and the assets of [Fannie Mae]." 12 U.S.C. § 4617(b)(2)(A)(i). I indicated in the Prior Order that Banneck's demands for awards in the nature of penalties are barred as a matter of law. Prior Order at 2.

But, contrary to Fannie Mae's assertion, I did not previously conclude that statutory damages are barred as a matter of law. *Compare* MTD at 3 ("The Court's holding that the penalty bar precludes claims for statutory damages while Fannie Mae is in conservatorship is law of the case."), *with* Prior Order at 2 ("His demands for amounts in the nature of penalties … are barred by [HERA] … ."). Banneck asserts a claim under the FCRA for the first time in the Amended

6

Complaint, and the CCRAA does not provide for "statutory damages."[1]  I have not yet ruled on the issue of whether the penalty bar precludes statutory damages.

Under section 1681n, "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of … any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000… ." 15 U.S.C. § 1681n(a). The Ninth Circuit has noted that FCRA's legislative history fails to "shed any light on the purposes of the statutory damages provision." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 n.7 (9th Cir. 2010). It nonetheless "presume[d] that the statutory damages serve a compensatory function" for two main reasons. *Bateman*, 623 F.3d at 718. First, the legislation "provide[s] a consumer the option of recovering either actual or statutory damages, but not both," which "supports the presumption that they serve the same purpose." *Id*. And second, the statute also provides for punitive damages, *see* 15 U.S.C. § 1681n(a)(2), "which further suggests that the statutory damages provision has a compensatory, not punitive, purpose." *Bateman*, 623 F.3d at 718.

Although the *Bateman* court went on to note that the statute's "actual and statutory damages provisions also effectuate the Act's deterrent purpose," that does not render the provisions subject to the Penalty Bar. *Id*. To the contrary, *Bateman*'s clear holding that the provisions are "not punitive" makes the Penalty Bar inapplicable. *Id*.; *accord Harris v. Mexican Specialty Foods, Inc.*, 56 F.3d 1301, 1313 (11th Cir. 2009) ("Because the FCRA already contains a punitive damages provision and specifies that statutory damages may only be awarded in lieu of actual damages, the district court erred in concluding that the statutory damages provision is tantamount to a punitive damages provision."); *Stillmock v. Weis Markets*, 385 Fed. App'x 267, 277 (4th Cir. 2010) (the availability of statutory and punitive damages further "highlights the fact

---

[1] The provision that Fannie Mae cites as providing "statutory damages" under the CCRAA explicitly references "[p]unitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation… ." Cal. Civ. Code § 1785.31(a)(2)(B). This provision is easily distinguished from FCRA's provision, which provides for actual *or* statutory damages, *in addition to* punitive damages. *See* 15 U.S.C. § 1681n(a)(2).

7

that statutory damages serve a compensatory, rather than punitive function."); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1168 (D. Kan. 2008) ("The actual or statutory damages in subsection (a)(1), however, are in the nature of compensatory damages."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002) ("Whatever its reason, the statute unambiguously indicates that statutory damages can be awarded in lieu of, but not in addition to, actual damages. Therefore, the statutory damage provision acts as compensation, and is not punitive."); *Navigators Ins. Co. v. Sterling Infosystems, Inc.*, 2015 WL 4540389, at *5 (N.Y. Sup. 2015) ("Interpreting the FCRA statutory damages as punitive forces the Court to reconcile the illogical result in which punitive damages may be added to the punitive statutory damages, but actual damages may not be added to those same punitive statutory damages. Interpreting the statutory damages as compensatory results in a more harmonious reading of the FCRA's overall damages structure.").

Fannie Mae insists that *Bateman* and other cases deeming FCRA's statutory damages compensatory are "inapposite" because those courts did not analyze the applicability of the Penalty Bar. MTD at 5. It then analogizes FCRA's damages provision to the Truth In Lending Act (TILA), which courts have found compensatory for some purposes, but penal for others. *See, e.g.*, *Riggs v. Gov't Emp. Fin. Corp.*, 623 F.2d 68, 72 (9th Cir. 1980) ("The Supreme Court recognized long ago that statutes such as section 1640(a)(2)(A) [TILA] can be readily characterized as penal against the violator but remedial as to the victim."). Fannie Mae fails to convince me that I should place greater weight on cases analyzing a different statute in the face of controlling precedent explicitly indicating that FCRA's provision is "compensatory, *not* punitive[.]" *Bateman*, 623 F.3d at 718 (emphasis added).

Since FCRA's statutory damages are not punitive, or "in the nature of penalties," Fannie Mae's motion to dismiss Banneck's request for statutory damages is DENIED.

## II.  PROHIBITED DISCLOSURE CLAIMS

Section 1681e(c) of FCRA and section 1785.14(c) of CCRAA provide that a CRA may not prohibit a user of a consumer credit report furnished by the CRA from disclosing the contents of the report to the consumer. And section 1785.10.1 of the CCRAA makes it "unlawful for a [CRA]

8

to prohibit in any manner, … or to dissuade or attempt to dissuade, a user of a consumer credit report furnished by the [CRA] from providing a copy of the consumer's credit report to the consumer, upon the consumer's request[.]" Cal. Civ. Code § 1785.10.1. Banneck alleges that Fannie Mae has violated these provisions because its "standardized contracts" and general practice prohibit DU System users from sharing DU Findings with consumers.[2] AC ¶¶ 4, 28, 73–77.

The Subscription Agreement, which grants the user a license to download, access, and use the software and associated documentation, provides that the "Licensee shall not resell, sublicense, distribute, allow access to or otherwise provide or make available for any purpose any component of the Licensed Materials to any person, firm or entity." Subscription Agreement § 3.3(c). Fannie Mae insists that this provision is intended to protect its trade secret and intellectual property interests in the DU software, which is confirmed by reviewing the surrounding provisions. MTD at 9. And it contends that the DU Schedule, which dictates the licensing terms specific to DU, explicitly authorizes disclosure. *Id*. at 10. Section 6 of the DU Schedule provides, in part,

> **Unauthorized Representations.** Notwithstanding the provisions of the Section of the Master Terms captioned "Unauthorized Representations," Licensee may inform a Customer of (a) the recommendation (e.g., "approve," "refer," "expanded approval" or "refer with caution") generated by the Licensed Application in connection with such Customer's Loan Casefile, and (b) the related underwriting findings generated by the Licensed Application; provided, however, that (i) such recommendations and findings are appropriately tailored so as to render them understandable and meaningful to Customers, and (ii) if such recommendations or findings contain any reference to Fannie Mae or if Fannie Mae presents Licensee with a written request to do so, Licensee simultaneously informs such Customer that any recommendation or

---

[2] Banneck specifically cites Fannie Mae's Software Subscription Form/Agreement and its DU Schedule Non-Seller/Servicer Terms and Conditions. AC ¶¶ 74–75. Fannie Mae attached these agreements (and one not mentioned in the Amended Complaint) to the declaration of Melinda Armstrong-Kielmeyer submitted in support of its motion to dismiss. *See* Software Subscription Form/Agreement ("Subscription Agreement")(MA Kielmeyer Decl. ¶ 2, *id*., Ex. A); Desktop Underwriter Schedule ("DU Schedule")(MA Kielmeyer Decl. ¶ 2, *id*., Ex. B). Since these agreements were explicitly referenced and quoted in the complaint and their authenticity is unquestioned, I will consider the full contents of the agreements for purposes of the motion to dismiss. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("[A] court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."). But the third agreement attached to the Kielmeyer Declaration, the DO Schedule, was not referenced in the complaint and will not be considered.

> finding rendered by the Licensed Application does not constitute an approval or denial of a Mortgage Loan Application by Fannie Mae or a commitment to purchase a loan by Fannie Mae. … .

DU Schedule § 6. From these contractual provisions Fannie Mae insists that Banneck's prohibited disclosure claims must fail.

At the pleading stage, I cannot accept Fannie Mae's narrow interpretation of Banneck's claims. First, his complaint references Fannie Mae's practice of prohibiting disclosure, irrespective of the contractual language. *See* AC ¶¶ 28, 77. Second, the contractual language appears to prevent disclosure of the complete contents of DU Findings Reports because it states that any disclosed findings must be "appropriately tailored so as to render them understandable and meaningful to Customers… ." DU Schedule § 6. And third, he explicitly alleges that he requested a copy of the DU Findings Report and his prospective lender refused. AC ¶ 78. While Fannie Mae points out that Banneck does not allege that the lender refused because Fannie Mae prohibited such disclosure, without discovery Banneck cannot allege that fact, which is reasonably inferred from the other allegations in the AC.

Under these circumstances, Banneck has plausibly pleaded his prohibited disclosure claims.[3] *Cf. Meyer v. Nat'l Tenant Network, Inc.*, No. c-13-3187-JSC, 10 F. Supp. 3d 1096, 1100 (N.D. Cal. 2014)("Because the form states that the report, without exception, 'must not be disclosed' to the consumer, Plaintiffs have stated a claim under Section 1681e(c), which forbids Defendant from prohibiting the user's disclosure of the report to the consumer if adverse action against the consumer has been taken by the user, as is alleged here."). Fannie Mae's motion to dismiss these claims is DENIED.

## III. WILLFUL VIOLATIONS

In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), the Supreme Court held that a company "willfully" violates FCRA when it knowingly violates it, and when it acts with reckless

---

[3] His argument focused on the Subscription Agreement's Restrictions is not convincing in light of the DU Schedule's language explicitly replacing that portion of the Subscription Agreement. *See supra* DU Schedule § 6; Opp'n (noting that the Subscription Agreement defines "Documentation" to include any "reports" Fannie Mae provides to the lender, and this "Documentation" is part of the "Licensed Materials," whose use is explicitly restricted).

10

disregard of its statutory duties. *Id*. at 57–60. When a company's reading of a statute is objectively reasonable, it "falls well short" of meeting the standard of recklessness. *Id*. at 70. And the *Safeco* court specifically rejected the argument that "evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable[.]" *Id*. at 70 n.20.

Against this backdrop, Fannie Mae argues that it cannot be liable for willful violations of the FCRA and CCRAA because it was objectively reasonable for it to maintain that it was not a consumer reporting agency ("CRA"), and that DU Findings are not consumer reports, regardless of whether its interpretation was later deemed incorrect.[4] MTD at 12. It insists that its interpretation was objectively reasonable because (1) it had a foundation in the statutory test, (2) it did not have the benefit of guidance from appellate courts or an administrative enforcement agency, and (3) FCRA is unclear. *Id*. at 13 (citing *Safeco*, 551 U.S. at 69–70). It urges that the reasonableness of its interpretation is further supported by the multiple courts that have held that DU does not make Fannie Mae a CRA and DU Findings are not consumer reports. MTD at 14.

That said, it also acknowledges that the district court in *Zabriskie v. Fed. Nat. Mortg. Ass'n*, 109 F. Supp. 3d 1178 (D. Ariz. 2014), examined FCRA's definition of a CRA and found as a matter of first impression that, based on the allegations, Fannie Mae met each of the elements. *Id*. at 1183. The Ninth Circuit has subsequently confirmed that a complaint's allegations were sufficient to "raise the reasonable inference that Fannie Mae 'regularly engages ... in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties,' and therefore qualifies as a 'consumer reporting agency' under 15 U.S.C. § 1681a(f)." *McCalmont v. Fed. Nat'l Mortg. Ass'n*, 677 F.

---

[4] The CCRAA refers to "consumer credit reporting agency" and "consumer credit report," but the definitions are materially similar to FCRA's definitions of "consumer reporting agency" and "consumer report." *Compare* Cal. Civ. Code §§ 1785.3(c), (d), *with* 15 U.S.C. §§ 1681a(d), (f). The analysis will focus on FCRA's definition, but apply equally to the CCRAA's definitions. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010)("[B]ecause the CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.' *Olson v. Six Rivers Nat'l Bank,* 111 Cal.App.4th 1, 3 Cal.Rptr.3d 301, 309 (2003).").

11

App'x 331, 331–332 (9th Cir. 2017).

Fannie Mae insists that these later cases have no bearing on whether Fannie Mae's interpretation was objectively reasonable at the time of the acts underlying Banneck's complaint. That may be true. But, as demonstrated by the bulk of Fannie Mae's cases, any consideration of whether its interpretation was objectively reasonable is best left for later in the proceedings.[5] *See Derderian v. Sw. & Pac. Specialty Fin., Inc.*, 673 F. App'x 736, 739 (9th Cir. 2016)(affirming district court's grant of defendant's motion for summary judgment in part because its "alleged failure to observe such a novel and unspoken requirement could not have been 'willful,' as required for [plaintiff's] claim brought under § 1681n."); *Banga v. Experian Info. Sols., Inc.*, No. C 09-04867 SBA, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013)(granting Experian's motion for summary judgment on plaintiff's claim for willful violation because Experian's interpretation of the statute was not objectively unreasonable); *Fuges v. Sw. Fin. Servs., Ltd.*, No. 2:09-CV-00699, 2011 WL 5865961, at *1 (E.D. Pa. Nov. 22, 2011) (granting defendant's motion for summary judgment in part because "no jury could reasonably find that Southwest *willfully* violated the FCRA, given the FCRA's ambiguity with respect to Southwest's business model and the extraordinary dearth of relevant judicial and agency guidance."); *Pintos v. Pac. Creditors Ass'n*, No. C 03-5471 CW, 2011 WL 1399292, at *4 (N.D. Cal. Apr. 13, 2011)(granting defendant's motion for summary judgment on the issue of willfulness).

At the motion to dismiss stage, I must accept Banneck's plausible allegations as true and draw all reasonable inferences in his favor. *See Usher*, 828 F.2d 561. He alleges that Fannie Mae uses its DU System to assemble consumer credit information along with details from the loan

---

[5] Banneck highlights other flaws in Fannie Mae's posture. For instance, it has not actually articulated its interpretation of CRA and explained how its interpretation is not triggered based on its use of the DU System. Fannie Mae offers its interpretation that it is not a CRA, but it does not tie that interpretation to the statute. *See* Reply at 9. Without a justification for its interpretation, I cannot determine whether it "ha[s] a foundation in the statutory text." *Safeco*, 551 U.S. at 69–70. This oversight distinguishes these circumstances from the two cases cited by Fannie Mae for the proposition that this determination is "routinely" made at the pleadings stage. Reply at 11; *see Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012) (dismissing plaintiff's willfulness claims because Hilfiger's interpretation of the plain meaning of "expiration date" was not objectively unreasonable since it was not defined in the statute and no court of appeal had decided the issue); *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008).

12

application through its DU System, and evaluates this information to generate the DU Findings Report, containing findings, conclusions, comments, and results concerning the applicant's eligibility for credit, which it then provides to lenders or brokers. AC ¶¶ 23, 26–28. His allegations lead to the reasonable interpretation that a Fannie Mae is a CRA and its DU Findings Reports are "consumer reports" under FCRA. *See* 15 U.S.C. § 1681a(d)(defining a "consumer report" as a "written … communication … bearing on a consumer's credit worthiness … which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for … credit … ."); 15 U.S.C. § 1681a(f)(defining "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."); *see also Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320, 1323 (11th Cir. 1998) (articulating the "three fundamental elements" of a "consumer report"). He also alleges that Fannie Mae acknowledged its potential for liability under the FCRA in internal documents. *Id*. ¶¶ 30–31. He has plausibly pleaded Fannie Mae's willful violation of the statutes.

## IV. INJUNCTIVE AND OTHER EQUITABLE RELIEF

Fannie Mae contends that Banneck is not entitled to seek injunctive relief for several reasons: (1) his claim for injunctive relief under the CCRAA is preempted by FCRA, (2) he fails to allege a threatened injury necessary to state a claim for injunctive relief, (3) he fails to allege actual damages stemming from his prohibited-disclosure claims, and (4) HERA's anti-injunction provision precludes his injunctive relief request. As for Banneck's requests for other forms of equitable relief (disgorgement, restitution, "recessionary" damages), Fannie Mae argues that they should be dismissed with prejudice because they are not authorized by the statutes at issue.

On the first point, I have previously stated my agreement with the Honorable Jacqueline Corley, who was presented with the same argument and decided that the CCRAA's provision providing for injunctive relief was not "inconsistent" with FCRA, and therefore, was not

preempted. *Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 947–48 (N.D. Cal. 2012); *see DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2018 WL 1426602, at *4 (N.D. Cal. Mar. 22, 2018)("I agree with Judge Corley's thoughtful opinion in *Ramirez*."). I see no reason to alter my position. Second, Banneck asserts that he has been aggrieved by Fannie Mae's alleged violations of the CCRAA because he was denied a mortgage loan, so he need not allege a threatened violation. *See* Cal. Civ. Code § 1785.31 ("Injunctive relief shall be available to any consumer aggrieved by a violation *or* a threatened violation of this title whether or not the consumer seeks any other remedy under this section.")(emphasis added). The second point also disposes of Fannie Mae's third argument. Banneck alleges that he was damaged by Red Rock's denial of his loan application, and the basis of that denial was the "Refer With Caution" recommendation in the DU Findings Report, which resulted from the DU System inaccurately identifying a previous short sale as a foreclosure. AC ¶¶ 51–54. Later in the case, when appropriate, I will assess the availability of injunctive relief separately for each violation. At this juncture, accepting Banneck's allegations as true, his damage stemmed from Fannie Mae's alleged violations of the CCRAA.

Finally, HERA does not preclude Banneck's request for injunctive relief. Section 4617(f) provides that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." 12 U.S.C. § 4617(f). But the Ninth Circuit, in analyzing a similar provision applicable to the Federal Deposit Insurance Corporation (FDIC), concluded that "[t]he bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver." *Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1155 (9th Cir. 1997); *see also id.* ("Section § 1821(j) 'shields only the exercise of powers or functions Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions.'")(internal quotation marks omitted). *Cf. Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (holding that section 1821(j) barred plaintiff's request for rescission because "the FDIC was acting well within its broad statutory powers as receiver when it sold the HUD partnerships."). As in *Sharpe*, if Fannie Mae "has acted beyond, or contrary to, its

statutorily prescribed, constitutionally permitted, powers or functions[,]" it would not be protected by HERA. Banneck's request for injunctive relief may proceed.

On the other hand, Banneck provides no basis for his requests for other equitable relief. The asserted statutes limit the forms of relief available to private litigants to actual damages for negligent violations, statutory and punitive damages for willful violations, and attorneys' fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o; Cal. Civ. Code § 1785.31(a). "[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974). Banneck's request for other equitable relief, including disgorgement, restitution, "recessionary" damages, are DISMISSED.

## CONCLUSION

In accordance with the foregoing, Fannie Mae's motion to dismiss is DENIED, except that Banneck's requests for other forms of equitable relief are DISMISSED. It shall answer the AC within 20 days.

**IT IS SO ORDERED.**

Dated: May 18, 2018

William H. Orrick
United States District Judge