UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BANNECK,<br><br>                    Plaintiff,<br><br>          v.<br><br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br><br>                    Defendant. | Case No. 17-cv-04657-WHO<br><br>**ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 97 |

### INTRODUCTION

Plaintiff James Banneck ("Banneck") brings the instant lawsuit against Defendant Federal National Mortgage Association ("Fannie Mae") alleging violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCRAA") and the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). Banneck claims that Fannie Mae's Desktop Underwriter ("DU") system, which is used by lenders to determine whether an applicant's loan can be purchased by Fannie Mae, generated an inaccurate DU findings report that negatively impacted his loan application. He contends that Fannie Mae prohibited mortgage originators from providing consumers with a copy of their DU findings report in violation of the CCRAA and FCRA.

The Ninth Circuit has recently decided the dispositive issue in this case—Fannie Mae is not a consumer reporting agency under the FCRA. *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 912 F.3d 1192, 1195 (9th Cir. 2019). Accordingly, I GRANT Fannie Mae's motion for summary judgment.[1]

---

[1] In light of my finding that Fannie Mae is not a consumer reporting agency, I need not reach Fannie Mae's additional arguments that it is entitled to summary judgment on Banneck's

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

    **A.    Fannie Mae's DU System**

Fannie Mae is a government-sponsored for-profit corporation that is chartered by Congress to make home ownership more accessible by purchasing mortgages from lenders in the secondary mortgage market.  Am. Compl. ("AC") ¶¶ 12, 14–15 (Dkt. No. 45); *see* 12 U.S.C. §§ 1716–17. Lenders can determine whether a given loan is eligible for Fannie Mae to purchase as a DU loan manually or automatically.  Fannie Mae provides a Selling Guide, published free online, so that mortgage lenders can underwrite loans manually.  Armstrong-Kielmeyer Decl., Ex. 1 at -21243 (Dkt. No. 97-4).  It also offers an online software application called the DU system, to automate the loan application process.  *See* Oakley Decl., Ex. A at 29:8–13, 82:18–83:12 (Dkt. No. 97-2); *see also* Armstrong-Kielmeyer Decl., Ex. 1 at -21247–48.  To use the DU software, mortgage lenders must enter a software subscription agreement with Fannie Mae, setting out their respective roles between the licensor (Fannie Mae) and licensee (mortgage lender).  Armstrong-Kielmeyer Decl., Ex. 2, 13, 14.

Lenders collect and input relevant information from the loan applicant into the DU system. Oakley Decl., Ex. B at Resp. to Interrog. Nos. 1, 4, 5, 22.  After information is entered, the DU system generates a DU findings report.  Oakley Decl., Ex. A at 44:4–21; 65:16–67:5, 68:11–69:8; Ex. C at 29:17–30:10.  Fannie Mae does not obtain or assemble any of the consumer information related to the lender generating the DU findings report.  *Id*.  Once the data is input in the DU system, if the application meets the Selling Guide criteria the DU findings report will include an "Approve/Eligible" recommendation, meaning that the loan can be sold to Fannie Mae as a DU loan.  Armstrong-Kielmeyer Decl., Ex. 1 at -21265, -20997–99, -21265.  If the application does not meet the Selling Guide criteria, the DU findings report will include a "Refer with Caution" recommendation.  *Id*. at -21267.  In this scenario, the lender must manually underwrite the loan using the Selling Guide and represent that it meets the applicable criteria.  *Id*.

_____

reasonable procedures claim, or his prohibited disclosure and dissuaded disclosure claims.

United States District Court
Northern District of California

B.    **Banneck's Experience with the DU System**

In February 2010, Banneck completed a short sale of a residential property after he defaulted on two mortgage loans. Oakley Decl., Ex. D at 80:22–87:14; Exs. E–G. After waiting the obligatory two years from his short sale, in April and May 2013 Banneck sought mortgage loans with brokers like Southern Fidelity, Quicken Loans, and Red Rock to purchase a property in Las Vegas. Oakley Decl., Ex. D at 19:23–20:9, 93:7–95:2; 102:2–103:24; Ex. H; Ex. K at 69:24–70:22. Southern Fidelity and Quicken Loans denied his applications without submitting them to Fannie Mae's DU system. *Id.*, Ex. D at 19:23–20:9, 93:7–95:2; 102:2–103:24.

On June 23, 2013, Red Rock submitted Banneck's loan application information to DU, but received a report listing his prior mortgage loan as a foreclosure rather than a short sale. Armstrong-Kielmeyer Decl., Ex. 3. The foreclosure earned his report a "Refer with Caution" recommendation that Banneck then tried to correct. *Id.*, Ex. 4 at -34814–15. Three days later, on June 26, 2013, Red Rock worked with Banneck and sought to correct the reporting, but it received a response that the inaccurate information could not be removed. Oakley Decl., Ex. D at 39:8–25, Ex. M. Rather than manually underwrite Banneck's application, Red Rock ultimately denied it according to its own policy. *Id.*, Ex. D at 115:6–24, Ex. N.

II.    **PROCEDURAL BACKGROUND**

This is one of four similar cases asserting that Fannie Mae is a consumer reporting agency ("CRA"). First, in *Zabriskie*, the Ninth Circuit reversed the district court and held that Fannie Mae is not a CRA and cannot be held liable under the FCRA. 912 F.3d at 1200. Plaintiffs provided evidence that Fannie Mae controlled DU, stored consumer case files and updated DU, and even considered itself to be processing consumer information like a CRA. *Id.* at 1197–98. However, the court found the evidence and arguments "unconvincing" because it "implicitly assumes that functions performed by DU are actions performed by Fannie Mae." *Id.* at 1198. The same evidence suggested Fannie Mae's only purpose through DU was to "facilitate[e] a transaction between the lender and Fannie Mae." *Id.* at 1199. Finally, the statutory structure of the FCRA did not indicate Fannie Mae is a CRA because it would require Fannie Mae to comply with other FCRA duties directly to borrowers, contrary to Congress's intention that it operate

solely in the secondary mortgage market. *Id*. at 1200.

In the second case, *Walsh v. Federal National Mortgage Association*, No. 15-cv-00761 (D. Ariz. Jan. 15, 2019) (Dkt. No. 177), the district court granted Fannie Mae's motion for summary judgment because it was not a CRA under *Zabriskie*. The plaintiff filed a motion to alter or amend the judgment following this decision, but the court denied there was any manifest error. *Id*. (Dkt. No. 188). As the court explained, Fannie Mae "does not somehow become a CRA when lenders use its automated" DU system. *Id*. at 2. Even though there was evidence in *Walsh* not presented in *Zabriskie*, it did not create a genuine dispute of fact because "the Ninth Circuit's holding, reached under nearly identical factual circumstances as the case before the Court today, precludes the argument that Defendant is a CRA." *Id*.

In the third case, *McCalmont v. Federal National Mortgage Association*, No. 13-cv-2107 (D. Ariz. Jan. 15, 2019) (Dkt. No. 153), the district court again granted Fannie Mae's motion for summary judgment in response to the dispositive precedent set by *Zabriskie*. Plaintiff filed a motion to alter or amend the judgment, and the court denied it for similar reasons set out in *Walsh*. *Id*. (Dkt. No. 163). Additionally, the court rejected the plaintiff's argument that the Ninth Circuit failed to view the evidence in the light most favorable to the nonmoving party. *Id*. at 2.

In this case, Banneck filed his initial class action complaint on August 12, 2017, alleging three causes of action under the CCRAA. Compl. (Dkt. No. 1). Fannie Mae moved to dismiss. (Dkt. No. 19). After Banneck conceded that he did not request information from Fannie Mae, I dismissed his "right-to-access" claim under California Civil Code sections 1785.10 and 1785.15, and his "reinvestigation" claim under California Civil Code section 1785.16 without leave to amend. Minute Order (Dkt. No. 37) at 1–2. However, his "reasonable procedures" claim under section 1785.14(b) survived because it was not "based on the same act or omission" as the pending Fair Credit Reporting Act ("FCRA") putative class action in *Walsh v. Fed. Nat'l Mortg. Ass'n*, No. 15–cv–00761 (D. Ariz.). *Id*. at 2.

Banneck then filed an amended complaint on March 21, 2018 on behalf of himself, three putative California classes, and one national class. AC (Dkt. No. 45). The AC asserts three claims: (1) violation of the CCRAA, Cal. Civ. Code § 1785.14(b), for failing to follow reasonable

4

procedures to assure "maximum possible accuracy" of the reports it sold; (2) violation of the FCRA, 15 U.S.C. § 1681e(c), by prohibiting users of DU software from disclosing DU Findings Reports to consumers; and (3) violation of the CCRAA, Cal Civ. Code § 1785.14(c), for the same acts alleged in count two. AC ¶¶ 80, 89–94. Banneck also brought one claim as an individual, alleging that Fannie Mae violated the CCRAA § 1785.10.1 "by prohibiting, dissuading, and/or attempting to dissuade, including through the use of contracts, users of DU Findings Reports from providing Mr. Banneck with copies of such reports to him upon request, even when the user had taken adverse action against him based in whole or in part on the report." *Id*. ¶ 96.

I denied Fannie Mae's second motion to dismiss except for Banneck's requests for "other" forms of equitable relief such as disgorgement, restitution and recessionary damages. Order on Mot. to Dismiss AC (Dkt. No. 58). In response to the Order, on June 4, 2018, the Federal Housing Finance Agency moved to intervene as conservator for Fannie Mae, seeking interlocutory review. Mot. to Intervene (Dkt. No. 61). Fannie Mae then filed its answer to the amended complaint on June 7, 2018. Answer (Dkt. No. 67). I denied the Federal Housing Finance Agency's motion to certify the May 18, 2018 Order for Interlocutory Review (Dkt. No. 76) because it did not establish that interlocutory review would resolve a controlling question of law, that there were substantial grounds for difference of opinion, or provide a likelihood that an immediate appeal would materially advance the termination of the litigation. Order Denying Mot. to Certify (Dkt. No. 94).

Fannie Mae filed the instant motion for summary judgment on October 31, 2018. Motion for Summ. J. (Dkt. No. 97). The parties asked to delay the hearing until the Ninth Circuit published *Zabriskie* and they had a chance to brief it for me. I heard argument on February 20, 2019.

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the lack of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

For Banneck to succeed on his claims under the FCRA and CCRAA, he must establish that Fannie Mae is a CRA. A CRA is defined under the FCRA as (i) "any person which ... regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers" (ii) "for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).[2] As noted earlier, the Ninth Circuit recently held Fannie Mae is not a CRA under either part of this definition. *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 912 F.3d 1192, 1195 (9th Cir. 2019). In supplemental briefing, Banneck argues that *Zabriskie* is distinguishable on the facts and procedural posture. I disagree and must grant Fannie Mae's motion for summary judgment.

## I. ASSEMBLING OR EVALUATING CONSUMER CREDIT INFORMATION

To address the first part of the CRA definition, Banneck contends that Fannie Mae qualifies as a CRA for two reasons: it maintains independent programming and control of the DU system, and its own Fannie Mae witnesses testified that DU assembles consumer credit

---

[2] The CCRAA and FCRA definitions are virtually identical. *Compare* Cal. Civ. Code §§ 1785.3(c), (d), with 15 U.S.C. §§ 1681a(d), (f). The analysis will focus on FCRA's definition, but applies equally to the CCRAA's definition.

information.  Oppo. at 3–6.  These arguments were addressed directly in *Zabriskie;* the court was clear Fannie Mae did not meet this part of the CRA definition.

Banneck established that Fannie Mae creates and stores files in the process that lenders undergo while using DU, and that Fannie Mae exercises control over the raw data and other DU system functions.  *See, e.g.*, Francis Decl. Ex. 6 at FMZA-00019480, -83 (illustrating how lenders submit applications to DU and how credit transactions were processed); Ex. 8 (describing Fannie Mae's instructions for direct entry of credit data into DU); Ex. 10 (describing raw data processing and collection in the DU system).  Fannie Mae showed that it licenses DU to tell lenders whether a loan made from criteria submitted to DU would be eligible for sale to Fannie Mae as a DU loan, but does not issue credit decisions.  *See* Oakley Decl., Ex. A at 82:21–83:12 ("The lender uses [DU] to determine if the loan is eligible for sale to Fannie Mae…The purpose, correct, is to let the lender know if the loan is eligible for sale to Fannie Mae."); Ex. R at 15:8–17 (stating the DU system "enables lenders to input certain information related to a borrower, and DU then puts out – sort of fires back different messages related to that information in terms of whether it's eligible for purchase by Fannie Mae or not."); *see also* Ex. B at Resp. to Interrog. No. 25; Ex. X at Supp. Resp. to Interrog. No. 20 (relating to 5th–8th Affirmative Defenses); Armstrong-Kielmeyer Decl., Ex. 1 at -21267.

The Ninth Circuit considered these same arguments and found in favor of Fannie Mae. *Zabriskie*, 912 F.3d at 1197 ("In the process of creating, licensing, and updating DU, Fannie Mae does not assemble or evaluate consumer information.").  Although Fannie Mae created and controls DU, the Ninth Circuit found DU to be "merely a tool for lenders" to use in the process of their own assemblage and evaluation of consumer information.  *Id.*  Lenders input relevant consumer information into DU, contract and pay credit bureaus for the reports, and decide when to create DU findings reports in the first place.  *Id.*  Evidence that Fannie Mae "stores backups of software-generated case files" and "updates DU's database requirements for information imported from credit bureaus" did not establish that Fannie Mae assembles or evaluates information according to the Ninth Circuit.  *Id.* at 1198.

Banneck argues that this case is distinguishable because Fannie Mae's algorithms on its

servers and DU system constitute a "different analysis" than the one lenders undergo if they were to manually underwrite a loan according to the Selling Guide. Francis Decl. Ex. at FNMA_WALSH_0021243. At the hearing, Banneck contended that Fannie Mae creates a "foreclosure" recommendation on its DU findings reports that is not repeating the information lenders put into the system. But this type of evidence was not absent from the record in *Zabriskie*. The Ninth Circuit recognized that the algorithms process consumer information to determine loan eligibility. As for the foreclosure recommendation, the issue remains that "evidence of what DU does when lenders use it…implicitly assumes that functions performed by DU are actions performed by Fannie Mae." *Zabriskie*, 912 F.3d at 1198.

Banneck asserts that multiple Fannie Mae witnesses have conceded that Fannie Mae, through its DU system, assembles and evaluates consumer credit information consistent with the definition of a CRA. *See* Francis Decl., Ex. 2 at 90:14–91:21 ("the information that Fannie Mae receives from lenders as well as for consumer reporting agencies, ... feeds into DU to arrive at a recommendation based on the data."); Ex. 4 at 74:15–23 (discussing a model Fannie Mae utilizes to evaluate certain credit characteristics from the credit report); Ex. 5 44:15–20, 46:2–9 (discussing how DU evaluates the data lenders and brokers input into it). But again, *Zabriskie* expressly found this kind of evidence unconvincing. That Fannie Mae might consider itself to be processing consumer information in a licensing agreement was "not probative of what Fannie Mae *actually* does." *Zabriskie*, 912 F.3d at 1198. Moreover, the *Zabriskie* court found the supposed admissions from Fannie Mae witnesses to be "taken out of context." *Id*. While there is additional evidence from Fannie Mae witnesses here that was not present in *Zabriskie*, the result is no different. The deposition testimony does not go to "what Fannie Mae actually does" and instead repeats the kind of evidence discussed and rejected in *Zabriskie*. I cannot find Fannie Mae meets the first part of the CRA definition.

## II.     FOR PURPOSES OF FURNISHING REPORTS TO THIRD PARTIES

The second portion of the definition was also inapplicable to Fannie Mae in *Zabriskie* because there was no support in the record that Fannie Mae assembled information "for any purpose other than to determine a loan's eligibility for subsequent purchase by Fannie Mae."

*Zabriskie*, 912 F.3d at 1199.  The same is true here.

In his opposition brief, Banneck primarily relied on the district court's now vacated decision in the *Zabriskie* case to argue in support of its position that Fannie Mae was furnishing consumer reports to third parties.  He now contends that the distinct factual record here shows Fannie Mae knew its business practices met the definition of furnishing reports to third parties.  Fannie Mae provides FICO score credit data and other information to lenders with the DU findings report.  *See* Walsh Danko Dep. at 72:13–23 ("the FICO scores come directly off the credit report and are generated in a message…on DU findings.").  Banneck offers evidence that the Consumer Data Industry Association contends that Fannie Mae, and not lenders, miscoded short sales as foreclosures that gave rise to this lawsuit.  Francis Decl. Ex. 1.

The factual record here is not distinct from *Zabriskie*.  The type of evidence offered through the deposition testimony is similar.  *See, e.g.,* Francis Decl. Ex. 2 at 90:14–91:21 (stating DU evaluates consumer information in some ways); Ex. 4 at 72:13–23 (stating "FICO scores come directly off the credit report and are generated in a message…on DU findings.").  The Selling Guide was in the record here and in *Zabriskie*.  The *Zabriskie* court was aware that manual underwriting may differ from the DU system and that fact did not change the outcome.  Fannie Mae contends that the factual discovery in this case, *Walsh*, and *Zabriskie* was essentially identical.  *See* Supp. Brief at 2 (Dkt. No. 125) ("at the initial case management conference, the parties agreed to forego additional discovery relating to whether Fannie Mae is a CRA because this issue had been fully explored in *Walsh*," which in turn had agreed to designate as produced the same productions in *Zabriskie*.).

The Consumer Data Industry Association exhibit that Banneck asserts is unique to this case is not enough to distinguish this case from *Zabriskie*.  The conclusion of a third party that Fannie Mae is having problems with its foreclosure recommendations in DU is consistent with the allegedly erroneous DU findings report before the Ninth Circuit in *Zabriskie*.  The document would not change the Ninth Circuit's finding that this evidence goes to what DU does separate from Fannie Mae.  Nor does it undercut the Ninth Circuit's conclusion that Fannie Mae provides DU "to help lenders determine whether Fannie Mae will purchase the loans that they

originate…based only on information provided to it by lenders and credit bureaus." *Zabriskie*, 912 F.3d at 1199.  Following *Zabriskie,* I conclude (as did the district court in *Walsh* and *McCalmont*) that Fannie Mae is not a CRA.

### III.    PROCEDURAL DISTINCTION FROM ZABRISKIE

Banneck attempts to distinguish this case from *Zabriskie* based on the Ninth Circuit's supposed failure to view the evidence in the light most favorable to the nonmoving party.  But he also recognizes  that on the cross-motions for summary judgment before the panel in *Zabriskie* the court "evaluate[s] each motion separately." *Id.* at 1196.  The result was a finding that Fannie Mae is not a CRA.  His argument carries no weight.

Banneck also suggests that I wait to issue this opinion until after a petition for rehearing in *Zabriskie* is filed and decided.  A pending petition for rehearing en banc would not eliminate the precedent that *Zabriskie* currently provides.  *Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012) ("[A] published decision of this court constitutes binding authority which must be followed unless and until overruled[.]") (internal marks omitted), *aff'd*, 570 U.S. 1 (2013).  *Zabriskie* is dispositive.  I GRANT Fannie Mae's motion for summary judgment.

### IV.    ADMINISTRATIVE SEALING MOTIONS

Fannie Mae seeks to seal portions or entire exhibits to the Oakley and Armstrong-Kielmeyer Declarations in support of its motion for summary judgment that contain trade secret information, were designated confidential pursuant to the Protective Order, or contain confidential business information.  Dkt. No. 96.  Sealing is not sufficiently indicated for Exhibits H, M, V, and W, where the only reason in support is that these documents were designated confidential.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) ("the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion.  The…'compelling reasons' standard continues to apply.") (internal citations omitted).  The motion to seal is DENIED WITHOUT PREJUDICE with respect to Exhibits H, M, V, and W, and GRANTED with respect to the other exhibits sought to be sealed.  Fannie Mae has seven days from the date of this Order to submit an amended declaration in support of sealing, to provide compelling reasons beyond the confidentiality basis provided here.

In addition, Banneck filed motions to seal portions or entire exhibits to the Francis Declaration and references in supplemental briefing to those same exhibits. Dkt. Nos. 105, 122. Fannie Mae provided a declaration in support of sealing on the grounds that the exhibits contain trade secret information on its DU functionality, trade secret information on Fannie Mae's network for providing electronic credit reports, and confidential business information. There are compelling reasons to seal references to its trade secrets and confidential business information. *See, e.g., In re Elec. Arts, Inc.*, 298 F. App'x 568. 569 (9th Cir. 2008) (holding trade secrets could be sealed to prevent their use "as sources of business information that might harm a litigant's competitive standing."). These motions to seal are GRANTED.

## CONCLUSION

For the reasons stated above, Fannie Mae's motion for summary judgment is GRANTED. Judgment will be entered in accordance with this Order.

**IT IS SO ORDERED.**

Dated: February 26, 2019

William H. Orrick
United States District Judge